UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PATRICIA LEE RYMAN,      :
                        :CIVIL ACTION NO. 3:16-CV-52
        Plaintiff,    :
                        :(JUDGE CONABOY)
        v.           :
                        :
CAROLYN W. COLVIN,      :
Acting Commissioner of   :
Social Security,       :
                        :
        Defendant.    :
                        :

---

## MEMORANDUM

Pending before the Court is Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").  (Doc. 1.)  She alleged disability beginning on June 28, 2010, and she remained insured through December 31, 2010.  (R. 10.)  The Administrative Law Judge ("ALJ") who evaluated the claim, Jarrod Tranguch, concluded in his June 24, 2014, decision that Plaintiff's severe impairments of a history of morbid obesity, degenerative disc disease, and history of left ovarian cystic teratoma, status post surgery with post-surgical complications, did not alone or in combination meet or equal the listings.  (R. 12-14.)  He also found that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain nonexertional limitations and that she was capable of performing her past relevant work.  (R. 14-16.)  ALJ Tranguch therefore found Plaintiff was not disabled.  (R. 17.)

With this action, Plaintiff asserts that the Acting

Commissioner's decision should be reversed or remanded for the following reasons: 1) the ALJ erred by failing to give proper weight to the treating physician's opinion; 2) the ALJ committed reversible error by relying on an incomplete hypothetical question; 3) the ALJ committed reversible error by finding that Plaintiff was not fully credible because of her activities of daily living; and 4) the ALJ did not properly consider Plaintiff's complaints of pain. (Doc. 17 at 4-13.)   After careful review of the record and the parties' filings, the Court concludes this appeal is properly denied.

## I. Background

**A.   *Procedural Background***

Plaintiff protectively filed for DIB on February 22, 2013. (R. 10.)  The claims were initially denied on April 9, 2013, and Plaintiff filed a request for a hearing before an ALJ on July 28, 2014.  (*Id.*)

ALJ Tranguch held a hearing on June 4, 2014.  (*Id.*) Plaintiff, who was represented by an attorney, testified as did Vocational Expert ("VE") Gerald Keating.  (*Id.*)  As noted above, the ALJ issued his unfavorable decision on June 24, 2014, finding that Plaintiff was not disabled under the Social Security Act during the relevant time period.  (R. 17.)

Plaintiff's request for review of the ALJ's decision was dated July 28, 2014.  (R. 28-29.)  The Appeals Council denied Plaintiff's

request for review of the ALJ's decision on November 9, 2015.  (R. 1-6.)  In doing so, the ALJ's decision became the decision of the Acting Commissioner.  (R. 1.)

On January 11, 2016, Plaintiff filed her action in this Court appealing the Acting Commissioner's decision.  (Doc. 1.)  Defendant filed her answer and the Social Security Administration transcript on March 21, 2016.  (Docs. 10, 11.)  Plaintiff filed her supporting brief on June 22, 2016.  (Doc. 17.)  Defendant filed her brief on July 18, 2016.  (Doc. 18.)  Plaintiff filed her reply brief on August 11, 2016.  (Doc. 21.)  Therefore, this matter is fully briefed and ripe for disposition.

**B.   *Factual Background***

Plaintiff was born on May 13, 1951, and was fifty-nine years old as of her date last insured.  (R. 57; Doc. 17 at 2.)  She has a B.S. degree in computer science and her past relevant work includes jobs as a Telemarketer and a Research and Development/Networker.  (R. 59; Doc. 17 at 2.)

**1.   <u>Impairment Evidence</u>**

Because of reported pain, Plaintiff's primary care physician, Barry Kurtzer, M.D., ordered MRI of the cervical spine and lumbar spine which Plaintiff had on March 9, 2010.  (R. 452-53.)  The cervical spine MRI showed "mild to moderate neuroforaminal narrowing . . . at the C6-7 level and to a lesser extent elsewhere."  (R. 453.)  The lumbar MRI which showed "mild

degenerative change . . . without significant central canal compromise or neuroforaminal narrowing and mild edema right L5 pedicle likely early stress reaction." (R. 451.) On March 5, 2010, Plaintiff had nerve conduction studies of the left median and both ulnar nerves. (R. 276.) Both studies were within normal limits. (R. 277.)

On March 18, 2010, Plaintiff saw Dr. Kurtzer to discuss her neuropathy pain. (R. 324.) He increased her dosage of lyrica and noted that, at the time, she was taking Vicodin, fish oil, and Flexeril. (*Id.*)

At her May 10, 2010, visit, Plaintiff complained of pain in her left hip for which Dr. Kurtzer planned to get an MRI of the spine and hip. (R. 323.) The May 19, 2010, left hip MRI showed a "large pelvic mass probably dermoid neoplasm left ovary" for which surgical consultation was recommended. (R. 239.)

Plaintiff again saw Dr. Kurtzer on June 1, 2010, with complaints of hip and back pain. (R. 320.) Dr. Kurtzer noted that she was to be admitted to Mercy Hospital. (*Id.*) Upon admission, Plaintiff had a consultation with J. Michael Tedesco, D.O. (R. 169.) He recorded that Plaintiff was admitted to the hospital on that day because of lower hip and back pain. (R. 169.) He assessed her to have a probable cystic teratoma, left ovary. (*Id.*) He planned to do a pelvic ultrasound and schedule surgery. (*Id.*)

Plaintiff had surgery on June 21, 2010. (R. 184.) The

4

Plaintiff tolerated the procedure without difficulty and she was transferred to the recovery room in stable condition.  (R. 184-85.) Plaintiff was not discharged until June 26, 2010, because she had post-operative hemmorrhage and wound dehiscence.  (R. 176.)  Her post-operative course was noted to be "quite rocky" with return visits to the operating room to address the hemorrhage and wound dehiscence.  (R. 176-77.)  At the time of discharge, Plaintiff was ambulating and voiding without difficulty.  (R. 177.)  She was instructed to return in one week for incision check and to return sooner with evidence of abdominal pain, bleeding, fevers, or chills.  (*Id.*)

On July 7, 2010, Plaintiff called Dr. Tedesco complaining of pain in her lower abdomen and discharge from the suture site.  (R. 211.)  She visited his office with the same complaints on July 20, 2010.  (R. 210.)

Plaintiff followed up with Dr. Kurtzer in August 2010.  (R. 315, 317, 318.)  On August 18, 2010, she complained of pain at her surgery site.  (R. 318.)  Dr. Kurtzer noted that her right lower abdomen was tender and her incision was healed with two scabbed areas.  (*Id.*)  He ordered a CT of the abdomen and pelvis which she had on August 26, 2010.  (R. 315, 460.)  The scan showed "[n]o evidence of mass or acute inflammatory process in the abdomen or pelvis."  (R. 460.)  On August 31, 2010, Plaintiff complained of severe pain at the surgery site and profuse sweating.  (R. 314.)

Dr. Kurtzer noted that he wondered if Plaintiff was developing RSD, but "for the time being" he was going to use some Lidoderm patch and Neurontin.  (*Id.*)

Plaintiff saw Dr. Kurtzer again on September 28, 2010, and complained of back pain.  (R. 313.)  No objective findings were recorded.  (*Id.*)  Medications noted were Vicodin and Ambien.  (*Id.*)  A referral to Dr. Dhaduk was also noted.  (*Id.*)

At Plaintiff's next office visit of record--January 5, 2011-- Dr. Kurtzer noted that Plaintiff still had back pain.  (R. 311.)  No objective findings were recorded.  Dr. Kurtzer indicated that Plaintiff was checking her insurance coverage for "PT & ortho" and she would continue Vicodin.  (R. 311.)

On January 25, 2011, Plaintiff's chief complaints to Dr. Kurtzer were shortness of breath, cough, and congestion.  (R. 312.)  No other complaints or objective findings were recorded.  (*Id.*)

The only notation made at Plaintiff's February 28, 2011, visit was "Routine B/W."  (R. 310.)

On April 5, 2011, Plaintiff saw Dr. Kurtzer with the chief complaint of ear pain.  (R. 309.)  She also complained of abdominal pain, and Dr. Kurtzer noted that she had two hernias in her abdomen in the surgical site, knee pain, and that x-ray showed severe degenerative disease.  (*Id.*)  He planned to start Plaintiff on an antiinflammatory and refer her to surgery.  (*Id.*)

6

**2.**  **Opinion Evidence**

**a.**  **State Agency Consultant**

On April 2, 2013, Kurt Maas, M.D., a state agency consulting physician, reviewed the record and noted "[n]o follow up after hospitalization to [date last insured] to determine claimant's functional capacity.  Therefore there is insufficient evidence to determine severity of claimant's impairment."  (R. 93.)

**b.**  **Primary Care Physician**

Dr. Kurtzer, Plaintiff's primary care physician, completed a Medical Source Statement of Ability to Do Work-related Activities (Physical) ("Statement") on October 24, 2013.  (R.480-85).  In the Statement's introductory information, Dr. Kurtzer was asked to answer the questions with regard to Plaintiff's "conditions and limitations on and before June of 2010."  (R.480.)  He indicated the following: Plaintiff could occasionally lift and carry up to twenty pounds; at one time without interruption, she could sit for one hour, stand for twenty minutes, and walk for ten minutes; she could occasionally use her right hand for reaching overhead, handling, and pushing/pulling and frequently use it for all other reaching, fingering and feeling; she could use her left hand occasionally for overhead reaching, handling, feeling, and pushing/pulling and occasionally use it for all other reaching and fingering; she could frequently operate foot controls with both feet; she could never be exposed to humidity or wetness and

occasionally be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle, dust, odors, fumes and other pulmonary irritants, extreme heat and extreme cold; she could be exposed to moderate office noise; she could never climb ladders or scaffolds, stoop, kneel, or crouch and she could occasionally climb ramps and stairs, balance, and crawl; she could perform activities like shopping, walk without using a wheelchair, walker, or two canes or crutches, take public transportation, prepare simple meals, care for her personal needs, and sort, handle or use paper files but she could not travel without a companion for assistance, walk a block at a reasonable pace on rough or uneven surfaces, or climb a few steps at a reasonable pace with the use of a single handrail. (R. 480-85.) Although the form statement requested that the provider identify the medical or clinical findings supporting these assessments, Dr. Kurtzer did not do so. (R. 480-85.) Regarding sitting/standing/walking totals in an eight-hour day, Dr. Kurtzer made no findings. (R. 481.) Rather, he noted "retired." (*Id.*) When requested to "state any other work-related activities, which are affected by any impairments, and indicate how the activities are affected" and identify the medical findings that support this assessment, Dr. Kurtzer noted "SOB, Sweating - profuse." (R. 485.) He did not note the dates for which the findings applied or opine whether the limitations lasted for more than twelve months. (*Id.*)

8

Also on October 24, 2013, Dr. Kurtzer completed a Clinical Assessment of Pain ("Assessment"). (R.486.) In the Assessment, he offered the following opinions: "Pain is . . . present to such an extent as to be distracting to adequate performance of daily activities or work"; "Physical activity such as walking, standing, and bending . . . greatly increases pain causing abandonment of tasks related to daily activities or work"; "Medication impacts the individual's work ability to the extent that . . . medications will severely limit the patients [sic] effectiveness in the work place due to distraction, inattention, drowsiness, etc." (R. 486.)

**3.** **Function Report and Hearing Testimony**

**a.** **Function Report**

In her March 4, 2013, Function Report, Plaintiff indicated that it took her four to five months to recover from her June 2010 surgeries. (R. 139.) She stated that testing related to follow-up pain in her abdomen showed a tumor which was being monitored and diabetic problems which affected nerves in her feet and left hand. (*Id.*) Plaintiff noted that she had depression due to all of these problems. (*Id.*)

Plaintiff described her daily activities to include caring for her dog, playing on the computer, watching TV, napping, and making microwave dinners. (R. 140.) Regarding personal care, Plaintiff related that she could not take long showers because of back pain and trouble standing, and she could not walk long distances and had

9

to sit down while shopping so she sometimes made several trips to the store per week instead of one.  (*Id.*)  Plaintiff indicated she could do light household chores like vacuuming but she had to rest before finishing and she was unable to do outside work.  (R. 141.) She explained that she was unable to do these things because of too much lifting, excessive sweating, and lack of drive.  (R. 142.) Plaintiff reported she regularly goes to Walmart and the grocery store, she goes out with friends to eat or to gun shows monthly, and she can go out alone and does so most of the time because she is embarrassed by her sweating.  (R. 142-43.)  She indicated that her abilities to lift, squat, bend, stand, reach, walk, kneel, and climb stairs were affected by her conditions due to back and abdominal pains and her ability to concentrate was affected because her mind tended to wander due to frustration.  (R. 144.)  She added that she no longer enjoyed going out because walking problems and the previously mentioned sweating problem were sources of embarrassment to her and the people she might be with.  (R. 146.)

In the Supplemental Function Questionnaire which addressed Plaintiff's fatigue, she said the fatigue began after her June 2010 surgery, it increased since then due to pain from the surgery and her original back problem, she felt fatigued daily and she takes some medication that helps with the depression and activity level. (R. 147.)  In the Supplemental Function Questionnaire which

10

addressed Plaintiff's pain, she said the pain began in 2010--at first she had back pain, then pain related to her surgery and her knee and the pain is almost constant.  (R. 148.)

### b. Hearing Testimony

At the June 4, 2014, hearing, Plaintiff's attorney stated in his opening remarks that the main issue was Plaintiff's abdominal surgery and the related complications.  (R. 55.)  He added that arthritis and body habitus were secondary.  (R. 55-56.)

ALJ Tranguch directed Plaintiff to focus on the period of June 2010 through the date last insured of December 2010 in answering the questions posed.  (R. 66.)  Plaintiff said she became disabled as of June 28, 2010, because that was the date of her surgery. (*Id.*)  She explained that she had four surgeries, ended up in the ICU, and was in the hospital for one week rather than the outpatient dermoid cyst removal for which she went into the hospital.  (*Id.*)  Plaintiff testified that, after her discharge, she stayed with friends until about November and they continued to help her after she returned home.  (R. 67.)  She said that she was able to do most things on her own by the end of December 2010 but her friends continued to help until mid-January, although some tasks remained difficult.  (R. 68-69.)  Plaintiff noted that during this period of time she was either on Percocet or Vicodin which made her very sleepy and groggy.  (R. 69.)

ALJ Tranguch asked VE Gerald Keating to consider an individual

11

of the same age, education, and work experience as Plaintiff who could occasionally lift and carry up to twenty pounds and frequently up to ten pounds, who could stand and/or walk up to six hours in an eight-hour workday, could sit for at least six hours, could occasionally bend, stoop, crouch, crawl, kneel, use ramps and climb stairs but should avoid occupations requiring any climbing on ladders, ropes or scaffolds. (R. 84.) The VE testified that such an individual would be able to perform Plaintiff's past work as a telemarketer. (R. 85.) The VE also testified that the position would remain intact if the hypothetical individual were further limited to lifting and carrying no more than ten pounds and standing and walking for no more than two hours in an eight-hour workday. (*Id.*) If the individual were limited to work that is classified as either unskilled or semi-skilled due to medication side-effects interfering with concentration, VE Keating said the telemarketer position would be intact. (R. 85-86.) In the fourth hypothetical, the individual would need to take unscheduled breaks during the day to lie down or take naps, would be expected to be off task up to twenty percent of the workday, and would be expected to be late, absent or leave early two or more days per month on average. (R. 86.) The VE testified that such an individual would not be able to perform past work or any other type of jobs. (*Id.*)

**4.  ALJ Decision**

As noted above, ALJ Tranguch issued his decision on June 24,

2014.  (R. 10-17.)  He made the following Findings of Fact and Conclusions of Law:

    1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.

    2.    The claimant did not engage in substantial gainful activity (SGA) during the period from her alleged onset date of June 28, 2010 through her date last insured of December 31, 2010 (20 CFR 404.1571 *et seq.*).

    3.    Through the date last insured, the claimant had the following severe impairments: morbid obesity; degenerative disc disease; and history of left ovarian cystic teratoma, status post surgery with post-surgical complications (20 CFR 404.1520(c)).

    4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

    5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b).  She could lift and carry 20 pounds occasionally and 10 pounds frequently.  She could stand and/or walk for up to 6 hours and sit for 6 hours in an 8-hour workday.  She could occasionally bend, stoop, crouch, crawl, kneel, use ramps, and climb stairs.  She needed to avoid occupations requiring any climbing on ladders, ropes, or scaffolds.

6.  Through the date last insured, the claimant was capable of performing past relevant work as a telemarketer/telephone sales representative.  This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant was not under a disability, as defined in the Social Security Act, at any time from June 28, 2010, the alleged onset date, through December 31, 2010, the date last insured (20 CFR 404.1520(f)).

(R. 12-17.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[1]  It is necessary for the

---

[1]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record.  20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process.  *Id.*

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step

15

four of the sequential evaluation process when the ALJ found that

Plaintiff was capable of performing past relevant work as a

telemarketer/telephone sales representative.   (R. 16.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is

limited to determining whether there is substantial evidence to

support the Commissioner's decision.   42 U.S.C. § 405(g); *Hartranft*

*v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).   Substantial evidence

means "more than a mere scintilla.   It means such relevant evidence

as a reasonable mind might accept as adequate to support a

conclusion."   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see*

*also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).   The Third

Circuit Court of Appeals further explained this standard in *Kent v.*

*Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a
> talismanic or self-executing formula for
> adjudication; rather, our decisions make
> clear that determination of the existence *vel*
> *non* of substantial evidence is *not* merely a
> quantitative exercise.   A single piece of
> evidence will not satisfy the substantiality
> test if the Secretary ignores, or fails to
> resolve, a conflict created by countervailing
> evidence.   Nor is evidence substantial if it
> is overwhelmed by other evidence--
> particularly certain types of evidence (e.g.,
> that offered by treating physicians)--or if
> it really constitutes not evidence but mere
> conclusion.   *See* [*Cotter*, 642 F.2d] at 706
> ("'Substantial evidence' can only be
> considered as supporting evidence in
> relationship to all the other evidence in the
> record.") (footnote omitted).   The search for

> substantial evidence is thus a qualitative
> exercise without which our review of social
> security disability cases ceases to be merely
> deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence.  If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an exhaustive discussion of all the evidence.  *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).  "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . .

17

. the *Cotter* doctrine is not implicated." *Hernandez v. Comm'f of Soc. Sec.*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .").  "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted).  Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless.  *See, e.g., Albury v. Comm'r of Soc. Sec.*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review.").  An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v.*

18

*Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

Plaintiff asserts that the Acting Commissioner's decision should be reversed or remanded for the following reasons: 1) the ALJ erred by failing to give proper weight to the treating physician's opinion; 2) the ALJ committed reversible error by relying on an incomplete hypothetical question; 3) the ALJ committed reversible error by finding that Plaintiff was not fully credible because of her activities of daily living; and 4) the ALJ did not properly consider Plaintiff's complaints of pain.  (Doc. 17 at 4-13.)

**A.    *Treating Physician's Opinion***

Plaintiff first asserts that ALJ Tranguch erred by failing to give sufficient weight to Dr. Kurtzer's opinion.  (Doc. 17 at 4.) Defendant contends that substantial evidence supports the ALJ's evaluation of the opinion.  (Doc. 18 at 12.)  The Court concludes Plaintiff has not shown that this claimed error is cause for reversal or remand.

A treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight.  *See*, *e.g.*, *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(c)(2); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)).  This principal is codified at 20 C.F.R. 404.1527(c)(2), and is widely accepted in the Third Circuit.  *Mason*

19

*v. Shalala*, 994 F.2d 1058 (3d Cir. 1993); *see also Dorf v. Brown*, 794 F.2d 896 (3d Cir. 1986).  The regulation addresses the weight to be given a treating source's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).[2]  "A

---

[2] 20 C.F.R. § 404.1527(c)(2) states in relevant part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted); see also *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008).  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)).

Similarly, greater deference is due an examining source than a non-examining source.   20 C.F.R. § 404.1527(c)(1).  Section 404.1527(c)(3) provides the following:

> The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim,

> including opinions of treating and other
> examining sources.

*Id.*

In his review of evidence, ALJ Tranguch noted that the main issues prior to the date last insured

> were some complications after her surgery in
> June 2010 (See 1F and 2F).  However, the
> post-surgery recovery, during which time she
> was probably limited to a less than
> sedentary residual functional capacity (as
> she needed help with her personal care,
> etc.), lasted less than 12 months.  By her
> date last insured (which is approximately
> six months after the alleged onset date),
> she had recovered to the point where she was
> basically living independently (with friends
> coming over to help her at times) ( Hearing
> Testimony).  Given her underlying
> degenerative disc disease, some residual
> abdominal pain, and her obesity, a light
> residual functional capacity is appropriate.
>
> In 3F, the claimant mentions pain at
> the surgery site in August 2010 (pp. 67-68
> [Kurtzer Office Notes (R. 314-15)]), but in
> September 2010, her complaint was back pain
> with no objective findings noted (p. 66
> [Kurtzer Office Notes (R. 313)]).  In
> November 2010, she had some shortness of
> breath and cough/congestion, with no mention
> of back or abdominal pain, and no objective
> findings (p. 65 [Kurtzer Office Notes (R.
> 312)]).[3]  In January 2011 (after the date
> last insured), there is a note of back pain
> and she was prescribed Vicodin (p. 64
> [Kurtzer Office Notes (R. 311)]).

(R. 15-16.)

---

[3]  This office visit was on January 25, 2011.  (R. 312.)
There are no office visits of record from September 28, 2010, (R.
313) to January 5, 2010 (R. 311).

The ALJ considered Dr. Kurtzer's October 2013 opinion, noting that

> [t]he limitations set forth by Dr. Kurtzer
> purportedly relate back to June 2010 ([Ex.
> 8F] p.1).  The undersigned gives Dr.
> Kurtzer's medical source statement opinion
> limited weight because the form was not
> actually completed until October 24, 2013
> (pp. 6-7).  Dr. Kurtzer actually left blank
> the space provided for how long the claimant
> could sit, stand, and walk total in an 8-
> hour workday and noted that the claimant is
> "retired" (p. 2).  Dr. Kurtzer's actual
> treatment records from the period in
> question reflect somewhat inconsistent
> complaints and are lacking in terms of
> actual objective physical examination
> findings (See 3F and the discussion above)
> to support his opinion.  The claimant
> testified that she was basically living
> independently, with friends coming over to
> help her at times, by the time of her date
> last insured, about six months after her
> surgery.  Her post-surgery recovery lasted
> less than 12 months.

(R. 16.)

Plaintiff argues that the explanation provided by ALJ Tranguch is inadequate.  (Doc. 17 at 4.)  She first asserts that the retrospective nature of the opinion is not a basis to reject it. (*Id.* at 7.)  The Court agrees that this basis alone would be inadequate.  However, as set out above, ALJ Tranguch provided several reasons for assigning the opinion limited weight.  If the other reasons provided adequately explain his determination, remand is not necessary.  *See*, *e.g.*, *Albury*, 116 F. App'x at 330 (where the ALJ's decision is explained in sufficient detail to allow

meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless); *see also Burnett*, 220 F.3d at 119 ("[O]ur primary concern has always been the ability to conduct meaningful judicial review.").

Plaintiff next asserts that the fact that Dr. Kurtzer did not answer one question does not render the statement unsupported. (Doc. 17 at 8.)  This averment in general is accurate.  However, ALJ Tranguch cites other shortcomings which are related to and consistent with his review of evidence.  (*See* R. 15-16.)  The ALJ found the treatment records during the relevant time period did not support the opinion (R. 16), and Plaintiff does not address the evidence specifically cited by the ALJ.[4]  Rather, she points to evidence which post dates the date last insured (Doc. 17 at 9), records in which Dr. Kurtzer noted evidence of abdominal hernias or adrenal mass causing pain in April, June and December of 2011 (R. 299, 301, 306, 309).  Thus, these records do not contradict the ALJ's findings regarding records during the relevant time period or

---

[4]  Though the ALJ identified the wrong date for one office visit, *see supra* n.3, this error does not fundamentally undermine his analysis.  The misdated office visit record (R. 312), which was actually the record of an office visit approximately one month after the date last insured, does not provide objective support for Dr. Kurtzer's opinion.  The office visit notes show that Plaintiff complained only of shortness of breath, cough, and congestion. (*Id.*)  The record also indicates that Plaintiff did not see Dr. Kurtzer from September 28, 2010, to January 5, 2010, and she did not complain of abdominal pain from August 31, 2010, to April 5, 2011, at which time Dr. Kurtzer attributed the pain to abdominal surgery site hernias.  (R. 309-14.)

show that Plaintiff was disabled within the meaning of the act for a *continuous* period of twelve months.  Further, Plaintiff's notation that Dr. Kurtzer cited Plaintiff's shortness of breath and profuse sweating in support of his assessed limitations (*id.* at 6), does not show the opinion was well supported or entitled to additional weight: the identified support was not specifically indicated with each set of limitations as requested in the form (R. 480-85) and the bases cited do not include the pain which Plaintiff claims to be a major contributing factor in her inability to work.

Plaintiff's contention that the ALJ erred by not including a sit-stand option in his RFC is grounded in the acceptance of the limitations set out in Dr. Kurtzer's Statement.  (Doc. 17 at 8-9.) Because Plaintiff has not shown the ALJ erred in his analysis of Dr. Kurtzer's opinion, the sit-stand argument lacks foundation and need not be further discussed.

Plaintiff's final argument on this issue is that the ALJ's failure to address Dr. Kurtzer's Clinical Assessment of Pain is alone cause for reversal.  (Doc. 17 at 9.)  This claimed error is unavailing.  The ALJ cited Dr. Kurtzer's medical source statement as Exhibit 8F, the last page of which is the Assessment to which Plaintiff refers (*see* R. 485 (Ex. 8F at 7)).  ALJ Tranguch sets out specific irregular reports of pain and the lack of objective findings noted in Dr. Kurtzer's treatment notes (R. 15-16) and references this discussion and the exhibit in which the notes are

25

found in conjunction with his determination that one reason the opinion is entitled to limited weight is lack of support in treatment records (R. 16).   Thus, Plaintiff's complaints of pain were addressed in the ALJ's RFC analysis and inferentially included in his opinion assessment.   Because the relevant legal framework does not require the ALJ to discuss every finding set out in a treating source opinion, Plaintiff has not shown error on the basis alleged.

**B.    *Hypothetical Question***

Plaintiff next asserts that the ALJ committed reversible error by relying on an incomplete hypothetical question.   (Doc. 17 at 10.)   Defendant maintains that substantial evidence supports the ALJ's hypothetical question.   (Doc. 18 at 23.)   The Court concludes Plaintiff has not shown that this claimed error is cause for reversal or remand.

The Third Circuit Court of Appeals has held that to accurately portray a claimant's impairments, the ALJ must include all "credibly established limitations" in the hypothetical.   *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (citing *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999)).   Case law and regulations[5] address when a limitation is credibly established. 399 F.3d at 554.

---

[5] *Rutherford* specifically identifies 20 C.F.R. §§ 416.945, 929(c) and 927 as relevant to the inquiry.   399 F.3d at 554.

> Limitations that are medically supported and
> otherwise uncontroverted in the record, but
> that are not included in the hypothetical
> question posed to the expert, preclude
> reliance on the expert's response (*Burns*, 312
> F.3d at 123).  Relatedly, the ALJ may not
> substitute his or her own expertise to refute
> such record evidence (*Plummer*, 186 F.3d at
> 429).  Limitations that are medically
> supported but are also contradicted by other
> evidence in the record may or may not be
> found credible–the ALJ can choose to credit
> portions of the existing evidence but "cannot
> reject evidence for no reason or for the
> wrong reason" (a principle repeated in *Mason
> v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.
> 1993); [20 C.F.R. § 416.]929(c)(4)). Finally,
> limitations that are asserted by the claimant
> but lack objective medical support may
> possibly be considered nonetheless credible.
> In that respect the ALJ can reject such
> limitation if there is conflicting evidence
> in the record, but should not reject a
> claimed symptom that is related to an
> impairment and is consistent with the medical
> record simply because there is no objective
> medical evidence to support it. ([20 C.F.R. §
> 416.](c)(3)).

399 F.3d at 554.

Plaintiff's very brief argument hinges on the limitations found in Dr. Kurtzer's statement and the assertion that they are well-supported.  (Doc. 17 at 10-11.)  Having found no error in ALJ Tranguch's determination that the opinion was entitled to limited weight in part due to the lack of objective support, Plaintiff has not shown that the claimed hypothetical error is cause for reversal or remand.

**C.   *Credibility***

Plaintiff contends that the ALJ committed reversible error by

27

finding that she was not credible because of her activities of daily living.  (Doc. 17 at 11.)  Defendant maintains that substantial evidence supports the ALJ's credibility determination. (Doc. 18 at 17.)  The Court concludes Plaintiff has not shown that this claimed error is cause for reversal or remand.

The Third Circuit Court of Appeals has stated that "[w]e 'ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor.'"  *Coleman v. Commissioner of Social Security*, 440 F. App'x 252, 253 (3d Cir. 2012) (not precedential) (quoting *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003)).  "Credibility determinations are the province of the ALJ and should only be disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, Civ. A. No. 00-1309, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (citing *Van Horn v. Schwieker*, 717 F.2d 871, 873 (3d Cir. 1983)).

An ALJ is not required to specifically mention relevant Social Security Rulings.  *See Holiday v. Barnhart*, 76 F. App'x 479, 482 (3d Cir. 2003).  It is enough that his analysis by and large comports with relevant provisions.  *Id.*

Social Security Ruling 96-7p provides the following guidance regarding the evaluation of a claimant's statements about his or her symptoms:

> In general, the extent to which an
> individual's statements about symptoms can be

28

> relied upon as probative evidence in
> determining whether the individual is
> disabled depends on the credibility of the
> statements.  In basic terms, the credibility
> of an individual's statements about pain or
> other symptoms and their functional effects
> is the degree to which the statements can be
> believed and accepted as true.  When
> evaluating the credibility of an individual's
> statements, the adjudicator must consider the
> entire case record and give specific reasons
> for the weight given to the individual's
> statements.

SSR 96-7p.  "One strong indication of the credibility of an

individual's statements is their consistency, both internally and

with other information in the case record."  SSR 96-7p.

The Social Security Regulations provide a framework under

which a claimant's subjective complaints are to be considered.  20

C.F.R. § 404.1529.  First, symptoms such as pain, shortness of

breath, and fatigue will only be considered to affect a claimant's

ability to perform work activities if such symptoms result from an

underlying physical or mental impairment that has been demonstrated

to exist by medical signs or laboratory findings.  20 C.F.R. §

404.1529(b).  Once a medically determinable impairment which

results in such symptoms is found to exist, the Commissioner must

evaluate the intensity and persistence of such symptoms to

determine their impact on the claimant's ability to work.  *Id.*  In

so doing, the medical evidence of record is considered along with

the claimant's statements.  *Id.*

Plaintiff again presents a very brief argument in support of

29

Case 3:16-cv-00052-RPC   Document 22   Filed 10/14/16   Page 30 of 32

this claimed error, stating the fact that she was able to engage in some self-care activities six months after her surgery was not equivalent to an ability to perform substantial gainful activity on a consistent, remunerative basis at any exertional level. (Doc. 17 at 11-12.) In support of this assertion, Plaintiff cites her testimony that she continued to have significant assistance from her friends with household chores and she needed household modifications in order to live independently. (*Id.* at 12 (citing R. 67-70, 71-72, 75, 76-78, 80-81).)

Although Plaintiff testified that she was still receiving some assistance until mid-January 2011, she also testified that by the end of December 2010 she was basically able to do things on her own with some household modifications, like bringing glassware and dishware down to a lower level. (R. 68.) She was unsure when she was able to independently go shopping and to doctors' appointments, estimating it was mid-December 2010 or mid-January 2011. (R. 70.) Plaintiff testified to ongoing pain in her abdomen (*see*, *e.g.*, R. 72, 73, 80), but her subjective testimony does not show that ALJ Tranguch's determination is error in that he found her post-surgery recovery period lasted less than twelve months and, with specific citations to the record, her subjective complaints of pain were not supported by objective findings or consistent complaints to her

treating physician.[6]  (R. 15-16.)  Under relevant regulations and Social Security Rulings, it was not error for the ALJ to consider the medical evidence of record along with Plaintiff's statements in determining her credibility and RFC.  20 C.F.R. § 404.1529(b); SSR 96-7p.  Thus, Plaintiff has not shown that the ALJ's credibility finding is cause for reversal or remand.

## D. Complaints of Pain

Plaintiff's fourth claimed error is related to her credibility argument and argument that the ALJ erred in his assessment of Dr. Kurtzer's opinion in that she relies on her testimony about her continuing need for assistance and records post-dating the relevant time period.  (Doc. 17 at 9, 12, 13.)  The Court has found reliance on the cited evidence unpersuasive in those contexts and has no basis to conclude othrerwise here.  ALJ Tranguch cited records during the relevant time period where the claimed ongoing abdominal pain was not mentioned or supported by objective findings.  (R. 15-16.)  Thus, as discussed above, the Court cannot conclude that Plaintiff has shown the ALJ erred on the basis alleged.

Plaintiff makes the additional argument in a footnote that her "long, strong work history" entitled her to be afforded heightened credibility pursuant to Third Circuit caselaw.  (Doc. 17 at 13

---

[6]  Though not cited by the ALJ, the conclusion that Plaintiff has not shown error is bolstered by the fact that, in the Function Report, Plaintiff herself said that her surgery recovery period was four to five months.  (R. 139.)

(citing *Taybron v. Harris*, 667 F.2d 412, 415 (3d Cir. 1981);
*Dobrowolsky*, 606 F.2d at 409).)

Although a plaintiff with a long work history may be entitled
to consideration of that history in the assessment of her
credibility, *Dobrowolsky*, 606 F.2d at 409, Plaintiff cites no
authority that failure to do so is error.  As argued by Defendant,
a Plaintiff with a long work history is not automatically entitled
to have her complaints credited.  (Doc. 18 at 23 n.10 (citing
*George v. Colvin*, Civ. A. No. 4:13-CV-2803, 2014 WL 5449706, at *8-
11 (M.D. Pa. Oct. 24, 2014); *Passaretti v. Colvin*, No. 3:15-CV-520,
2015 WL 5697510, at *10 (M.D. Pa. Sept. 24, 2015)).)  In
*Passaretti*, where the ALJ had found that the plaintiff's claimed
limitations were not supported by the medical evidence of record,
this Court concluded the ALJ was not required to equate a long work
history with enhanced credibility.  2015 WL 5697510, at *10 (citing
*Birtig v. Colvin*, Civ. A. No. 14-565, 2014 WL 5410645, at *10 (W.D.
Pa. Oct. 23, 2014)).  There is no basis to find that a different
conclusion is warranted here.

## V. Conclusion

For the reasons discussed above, Plaintiff's appeal of the
Acting Commissioner's denial of benefits (Doc. 1) is denied.  An
appropriate Order is filed simultaneously with this Memorandum.


                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge

DATED: October 14, 2016